KOEBEL *v.* KOEBEL.

1. DIVORCE—EXTREME CRUELTY—PERSONAL VIOLENCE—EVIDENCE—
SUFFICIENCY.

In a suit for divorce, the charge of extreme cruelty, in that
defendant husband used personal violence toward plain-
tiff, *held,* sustained by the record.

2. SAME—FACTS DISCOVERED AFTER SEPARATION—ADMISSIBILITY.

While testimony that defendant took indecent liberties with
plaintiff's young daughter, of which she was not advised
until after she left him, could not be used as a reason
for leaving, it was competent for the court to consider,
in connection with other testimony, for the purpose of
determining whether defendant's home was a proper place
in which to rear the child, and whether plaintiff was
justified, after learning of it, in not returning.

3. SAME—ALIMONY.

In view of the fact that the record is persuasive that the
marriage was purely of a commercial character, and the
parties lived together only about a year, during which
time plaintiff and her two daughters received their sup-
port, an award of alimony of $6,000 will· be modified to
$4,000, the record showing that defendant was worth about
$25,000.

Appeal from Berrien; White (Charles E.), J.  Sub-
mitted November 4, 1919.  (Docket No. 94.)  Decided
February 27, 1920.

Bill by Clara Koebel against George C. Koebel for
a divorce.  From a decree for plaintiff, defendant ap-
peals.  Modified, and affirmed.

*Stratton & Evans,* for plaintiff.

*Gore & Harvey,* for defendant.

On the question of cruelty and abuse forcing spouse to leave
marital home as grounds for a divorce, see note in 29 L. R. A.
(N. S.) 618.

On amount of permanent alimony on absolute divorce, see
note in 44 L. R. A. (N. S.) 998.

BIRD, J. These parties were divorced by the Berrien circuit court. The decree was given to plaintiff, and carried with it $6,000 for temporary and permanent alimony. The defendant, feeling that the decree was at variance with the equities of the case, has appealed to this court.

The parties were married in March, 1916, and separated in April, 1917. Prior to the marriage plaintiff was a widow of 40, who resided in the city of St. Joseph with her two daughters, Lucille and Mildred, 9 and 11 years of age. Defendant was a widower of 57, who owned and resided on a farm a few miles distant from St. Joseph. A mutual friend brought the parties together, and after a very brief courtship they were married and went to live upon defendant's farm. In this new relation the family consisted of Mr. and Mrs. Koebel, Mrs. Koebel's daughters, and Charles Koebel, aged 13, the foster son of defendant. The spring and summer months appear to have passed without any serious friction. In October their troubles commenced when, as plaintiff claims, defendant choked her and ill-treated her children. Following this plaintiff left and went to her sister's. After an absence of a week or ten days defendant visited her. They talked over their difficulties and became reconciled and plaintiff returned to her home, as she says, under a promise by defendant that he would do better. They continued to live together until April, 1917, when she filed her bill, praying for divorce, on the ground of extreme cruelty. By way of specification she shows therein that defendant used personal violence on her, and also on her daughters; that he was parsimonious, that he was profane and vulgar in the presence of herself and daughters, that his demands for sexual indulgence were so frequent that she was made ill by complying therewith, and that he took

indecent liberties with her older daughter Mildred. By reason of these things she asserts life became intolerable with him.

Defendant answered and denied the serious charges made by plaintiff and claimed the benefit of a cross-bill, in which he charged plaintiff with extreme cruelty in this, that during their married life she continually nagged him about his property matters. It is also charged in defendant's cross-bill and argued by counsel that plaintiff's motive in marrying defendant was solely a commercial one, unmixed with any tinge or touch of sentiment, and counsel argues that the proofs show that she was a "matrimonial profiteer." It is rather to be inferred from counsel's argument that he thinks the failure of this marriage compact, instead of being classed among the domestic tragedies, should have been classed with and reported among the weekly commercial failures.

Extreme cruelty. We are impressed, as the chancellor was, that the charge of extreme cruelty was established by the testimony. That defendant, in October, 1916, while in an angry mood, assaulted plaintiff and choked her, was testified to by her and denied by him. Had the testimony stopped here, we should be in more doubt as to where the truth lies, but when we consider the corroborating testimony of Mildred and plaintiff's sister in connection therewith, we think the charge is sustained. We are also impressed with the story of Mildred that defendant took indecent liberties with her. The other specifications which go to make up the charge of extreme cruelty are not very serious and would, doubtless, have been soon forgiven and forgotten had there been enough sentiment in the marriage relation to have kept them together. Counsel makes a strong defense on the ground that the marriage was purely of the commercial type and that,

therefore, we should accept her claims with caution. The record is, indeed, persuasive that the union was begotten by a desire upon her part to secure a home for herself and children, and by a desire upon his part to secure a housewife. Conceding these to have been the real motives and assuming that the marriage was purely a commercial one in which "Dan Cupid" had no part, still even in such a contract plaintiff was entitled to protection against personal violence, while she was endeavoring to carry out her part of it. As we have said on former occasions, we know of no valid excuse a man can offer for using personal violence on his wife unless it is in self-defense.

It is argued by counsel that the testimony regarding the conduct of defendant with Mildred was inadmissible because plaintiff was not advised of the fact until after she left defendant and filed her bill. It is true the testimony could not be used by her as a reason for leaving defendant, but we think it was competent for the court to consider it in connection with the other testimony for the purpose of determining whether defendant's home was a proper place in which to rear the child, and whether she was justified, after learning of it, in not returning to his home.

Award of alimony. It is plaintiff's claim that defendant's real and personal property is of the value of $31,000. Defendant argues that its value does not exceed $21,000. The chancellor found that $24,000 or $25,000 would be a fair value. While we are inclined to accept the chancellor's valuation we are unable to agree with his award of $6,000 as temporary and permanent alimony. Considering the character of the marriage contract and the motives which apparently actuated it, the length of time the parties lived together, the care and support which she and her children received while in defendant's household, we think $4,000 would be a reasonable award of alimony. The

decree may be modified in this respect, and then affirmed. No costs will be allowed either party in this court.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, and SHARPE, JJ., concurred.

Justice KUHN took no part in this decision.